**Harvey PASCAL**

v.

**The UNITED STATES.**

**No. 379–74.**

United States Court of Claims.

Oct. 20, 1976.

Michael E. Goldman, Washington, D. C., for plaintiff; Robert M. Tobias, Washington, D. C., atty. of record.

Stephen G. Anderson, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant John W. Showalter, Washington, D. C., of counsel.

Before LARAMORE, Senior Judge, and DAVIS and KUNZIG, Judges.

### ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge:

Plaintiff Harvey Pascal, then an agent (GS–12) in the Audit Division of the Office of International Operations of the Internal Revenue Service, was originally removed by his agency on six different grounds. The Civil Service Commission sustained the re-

sult and four of the supporting reasons. We find it necessary to consider only the first two and confine this opinion to those determinations.[1]

After some five years with the Revenue Service in Brooklyn Pascal was transferred to International Operations in Washington. About five months later he was assigned to conduct a tax audit of the Canada Life Assurance Company in Toronto, Canada. This audit lasted for some time and Thanksgiving Day 1972 came in the midst of it. To visit his girl friend in New York, he flew from Toronto to New York on a flight leaving at 10:20 a. m. on Wednesday, November 22d, and arrived back in Toronto on a return flight at 11:00 on Monday, November 27th.

The first charge we take up is that he (a) falsely and intentionally stated in his official time reports that he had worked a full day (8 hours) on both Wednesday, November 22d, and Monday, November 27th, (b) had also falsely and intentionally charged the full day of Friday, November 24th, to official time, and (c) had included, likewise falsely and deliberately, those times during which he was actually not working in Toronto in his certification for *per diem* payments. The second, related, charge is that Pascal failed to obtained advance authorization to be absent from his place of duty in Toronto on part of that Wednesday, all of Friday, and part of Monday—which were working days.

The bare, hard, objective facts of these two charges are not and have not been contested; the chief dispute is over the administrative finding—within the agency and at both levels in the Civil Service Com-

mission—that plaintiff knew that his reports were false when he made them and also understood that he had not gotten authorization to take the time off.

Pascal's presentation was and is that prior to leaving Washington for Toronto he arranged with his girl friend (Ms. Josephine Hornstein), who was divorced with young children and lived in New York, to see her during the Thanksgiving weekend; she was to come to Toronto if she could get a babysitter. Pursuant to this plan he says he bought in Toronto on November 8th an airline ticket between Toronto and New York; he says he was then told, on inquiry, that the ticket was good either way so that Ms. Hornstein could use it from New York if she got a babysitter and he could use it from Toronto if she did not. On Tuesday, November 21st, Ms. Hornstein told him that she was unable to obtain help. He thereupon made reservations to fly from Toronto to New York on Wednesday, November 22d. His testimony was that, though he tried, he could not get accommodations on the 1:15 p. m. or 3:15 p. m. flights (which he said he was told were full) and had to take a reservation on the 10:20 a. m. flight. He testified that he thought he could travel to New York for the holiday weekend on government time (without taking leave of any kind). He added, also, that he had obtained oral authorization from his superior in Washington, over the 'phone, to take Friday off on compensatory leave.

■ This story is undermined, however, by the expressed disbelief of both the agency and the Civil Service Commission in plaintiff's credibility. Summarizing much of the conflicting evidence,[2] the Commis-

---

1. All the charges concerned Pascal's trip to Toronto, Canada, to audit the books of the Canada Life Assurance Company. Of the four charges we lay aside, the Commission upheld a count that Pascal had failed to maintain proper dress and grooming while conducting the audit in Toronto and another accusation that he had failed to perform adequate duty hours while on that assignment. Two counts were rejected by the Commission as unproved. One was that he had brought discredit upon the Revenue Service by conducting himself in an unacceptable manner while in Toronto through suggestive

behavior with regard to seeking female company; the other was that while in Toronto he failed to exercise reasonable care of government documents.

2. The following is an excerpt from the opinion of the Commission's Appeals Examining Office:

"Mr. Pascal has stated that his girl friend had planned to fly from New York to Toronto, Canada during the Thanksgiving holidays and that a ticket had been purchased from Air Canada for this purpose. Mr. Pascal could not recall whether he had purchased this ticket in Toron-

sion's Appeals Examining Office concluded that "Mr. Pascal's credibility has been damaged to the extent that we no longer find his statements worthy of belief. The Board of Appeals and Review was not so forthright but did say it concurred in the Examining Office's findings regarding the specifications dealing with the New York trip and was "not persuaded that these three specifications resulted from [plaintiff's] misunderstanding of his rights while in a travel status." These conclusions as to credibility are fully supported by the administrative record and we cannot, nor do we wish to, overturn them. *Cf. Sternberger v. United States,* 401 F.2d 1012, 1016–17, 185 Ct.Cl. 528, 535–36 (1968).[3] It follows that, with plaintiff's testimony thus discounted, there was more than substantial evidence to sustain the two charges we are considering. Indeed, on that basis the record practically compels a determination that plaintiff deliberately falsified his records in order to obtain an advantage to which he would not be entitled and which he knew he could not rightly claim.

With his back against the wall, plaintiff counters that, in any event, there was no regulation expressly forbidding his going to and returning from New York (over the Thanksgiving weekend) on official time. But it is not the principle of the govern-

---

to or whether his girl friend had purchased it in New York. He further testified that he did not plan to go to New York until he received a call from his girl friend on Tuesday, November 21, 1972 informing him that she could not find a baby sitter and could not make the trip. He then proceeded to call Air Canada to make reservations for his flight to New York. He states that he was told that the 3:15 p. m. and the 1:15 p. m. flights were filled but that space was available on the 10:20 a. m. flight.

"In an effort to discredit the appellant's testimony, the agency introduced a letter dated June 22, 1973 from Mr. D. Harry McCarl, Sales Manager, Air Canada, addressed to Mr. Stanton Hunter, Office of the Chief Counsel, Internal Revenue Service, wherein he states that Air Canada's records show that ticket 014/420 027 5526 was purchased in favor of Mr. H. Pascal on November 8, 1972 at Toronto International Airport. He further stated that all flights between Toronto and New York on November 22, 1972 were operated with DC–9 equipment having 16 first-class and 78 economy-class seats. The 1:15 p. m. flight to New York carried only 9 first-class and 25 economy-class passengers. The 3:15 p. m. flight carried 3 first-class and 43 economy-class passengers.

"During the hearing Mr. William Schaeffer, Inspector, IRS, testified that Mr. McCarl has informed him that the maximum number of 'no-show' passengers which would be expected on any flight would be three or four. He also stated that ticket # 014/420 027 5526 was used by Mr. Pascal on Air Canada flight 774, departing Toronto, Canada at 10:20 a. m. on November 22, 1972 and the return coupon was used by Mr. Pascal to return to Toronto from New York on Air Canada flight 217, arriving in Toronto at approximately 11:00 a. m. on November 27, 1972.

"From all of the above, it is clear that Mr. Pascal's statement that his flight to New York was a last minute decision lacks credibility. Mr. Pascal purchased the ticket for this flight fourteen days in advance of the flight, while in Toronto. If this ticket was purchased with the expectation that Ms. Hornstein, Mr. Pascal's girl friend, was to use it to fly from New York to Toronto, the ticket would have been purchased by her in New York, or at least in her name by Mr. Pascal in Toronto to be picked up at Air Canada's ticket office in New York. If purchased for Ms. Hornstein's use as early as November 8, 1972, Mr. Pascal would surely have mailed her the ticket. When confronted with Mr. McCarl's letter during the hearing, Mr. Pascal's recollection of the events of his flight to New York failed him. He could not even remember whether or not he had a ticket when he boarded the plane in Toronto."

In addition, the Government points out that, although Pascal testified that he made no reservations when he bought the round-trip ticket on November 8th, the ticket itself shows that he made a reservation for the 3:15 p. m. flight to New York on Wednesday, November 22d, and for the Monday, November 27th flight from New York which he actually took in returning to his duty station.

**3.** Plaintiff collates every possible bit of favorable evidence in an effort to show that his story was true, but this kind of argument, while appropriate before the fact-finder, is not very useful in this court where the standard is not what we would believe on a *de novo* appraisal but whether the administrative determination is supported by substantial evidence on the record as a whole. *Cf. Davis v. United States,* 164 Ct.Cl. 612, 616–17 (1964). Measured by that criterion, there is no doubt that the record sustains the determinations of the Commission and the agency. The refusal to believe plaintiff was entirely permissible, particularly in view of his repeated inability to remember on cross-examination crucial facts which he would be very unlikely to forget. His testimony does not have the affirmative ring of credibility.

ment world that everything is permissible which is not specifically prohibited by regulation or statute. Much is left to the common understanding that work-time is for work and those activities directly related to work—not for personal recreation or personal concerns. Plaintiff, a GS–12 revenue agent of substantial experience, must have known this. We agree with the Appeals Examining Office that "Mr. Pascal has been an employee of the Federal Government for approximately five and one-half (5½) years. We find it beyond belief that an employee with 5½ years of service would believe that he could travel for his own personnal [sic] pleasure on government time." [4]

■ Pascal then falls back with a blast of procedural objections, some of which relate only to the charges we have put aside but others touch upon the removal-reasons on which we center. These latter all fall short of their mark. Like many other claimants, plaintiff makes the mistake of believing that any procedural lapse, no matter how unrelated to the end-result, endows him automatically with a right to a judgment and to back-pay. We do not take that position but look to see not only whether an error occurred but whether it substantially affected plaintiff's rights in the removal process. See Rasmussen v. United States, Ct. Cl., 543 F.2d 134, p. 140, decided this day.

■ In the successive chronological steps of the removal procedure plaintiff first attacks the pre-charge investigation conducted by the IRS Inspection Service as biased and incomplete (contrary to the requirements of the Inspection Manual). On this point it is enough to say that, at least with respect to the two charges on which we focus, plaintiff had a full, trial-type hearing at the Civil Service Commission, at which

he had a full and fair opportunity to fill in any alleged gaps, or correct any alleged errors, made by the inspectors. Failure of the Inspection Service to conduct a full or proper pre-charge investigation would not vitiate the removal unless that investigatory failure tainted the adversary administrative hearing or process. Here, that was plainly not true; plaintiff was able to bring out at the hearing any relevant material he considered to have been omitted by the inspectors.[5]

■ Next, Pascal complains that the agency attempted to coerce him to resign. This was not proved but even if it were it would make no difference. Plaintiff did not resign. The remedy of an employee whose resignation stems from duress is to have the Civil Service Commission treat the involuntary resignation as an adverse personnel action. Gratehouse v. United States, 512 F.2d 1104, 1108, 206 Ct.Cl. 288, 296 (1975). Plaintiff, of course, received precisely that treatment and cannot expect to be placed in a better position simply because the alleged coercion failed to gain its objective.[6] There is also an assault on the oral reply, but it was given to the charging and removing officer (who was the Director of the Office of International Operations) and he met the standards we have laid down for the proper type of oral reply officer. Peden v. United States, 512 F.2d 1099, 1102, 206 Ct.Cl. 329, 336 (1975); Ricucci v. United States, 425 F.2d 1252, 192 Ct.Cl. 1, motion for reconsideration denied, 432 F.2d 453, 193 Ct.Cl. 120 (1970). The content of the interview was likewise sufficient under Grover v. United States, 200 Ct.Cl. 337, 348–49 (1973); the reply officer seems to have made a conscientious effort to learn Pascal's reasoning and the actual facts as the employee saw them.

---

4. The regulation permitting employees on away-from-home assignments to go home for the weekend obviously did not authorize non-weekend working time for that purpose (unless leave was taken).

5. Plaintiff complains, too, that there were omissions in the investigatory file which was shown to him, but this point was not adequately raised

before the agency or the Civil Service Commission and is not available here.

6. For the same reason it is immaterial that the hearing examiner refused to accept an affidavit from plaintiff's counsel bearing on some of the circumstances of the alleged attempt to coerce plaintiff to resign.

Above all, plaintiff charges that the agency was predetermined to remove him. This is a type of attack easy to make but here, as in so many cases, the claimant has not proven that his employer was set upon separating him regardless of how the facts turned out. Of course, if the evidence did turn out to support the first two charges, the agency had made up its mind—but there was nothing improper about that. On their face the charges were not demurrable. The crucial point is that plaintiff has failed to demonstrate that the Service would have been impervious if the proof failed to show that the facts were as charged.

■ Next, plaintiff complains that the Civil Service examiner accepted written unsworn statements from various persons, thus depriving him of the right to cross-examine and probe. The only such hearsay statements relevant to the two counts we are analyzing were those of the sales manager of the airline (Air Canada) and of an IRS employee who testified that her supervisor had told her that plaintiff could not properly seek *per diem* for the working days (over the Thanksgiving weekend) he was not in Toronto. The IRS inspector's testimony as to what he had been told by the airline official was thoroughly buttressed by the latter's written statements which were very precise and detailed, and related to matters as to which air carriers customarily keep specific records. There is no reason whatever to doubt the accuracy and truthfulness of this evidence. In an administrative hearing like that conducted here, hearsay is admissible if sufficiently convincing to a reasonable mind and if it

reveals sufficient assurance of its truthfulness. *E. R. McKee Constr. Co. v. United States*, 500 F.2d 525, 528, 205 Ct.Cl. 303, 310 (1974).[7] The other disputed hearsay testimony did not involve any factual issue but referred solely to a legal opinion of a particular administrative official which was obviously not binding on the Civil Service Commission if it viewed the law differently.[8]

■ Finally, Pascal urges that the penalty of removal was in any event too severe. Because we have put aside all but two of the charges originally levied, we need not consider whether discharge would be appropriate for the grounds (or any of them) no longer in the case as we shape it. The issue is, rather, whether removal was a proper sanction for the first two grounds relating to plaintiff's absence from Toronto over the Thanksgiving weekend of 1972.[9] On that we have no qualms on this record. The employee was found to have deliberately and intentionally falsified travel, work, and *per diem* records in an effort to obtain a distinct and substantial advantage from the Government. There is little doubt, as we have said, that this determination was fully supported. The two charges were not trivial or even minor. We have consistently ruled that deliberate falsifications of this character bear on the "efficiency of the Service" and, once proved, warrant separation (if that is an authorized sanction). *See Birnholz v. United States*, 199 Ct.Cl. 532 (1972); *Grover v. United States*, 200 Ct.Cl. 337, 353–54 (1973); *Hoover v. United States*, 513 F.2d 603, 607–08, 206 Ct.Cl. 640, 648–49 (1975); *Rifkin v. United States*, 209 Ct.Cl. 566, 585 (April 1976).[10] Here, remov-

---

7. It is also significant that the airline manager was not an employee of the Federal Government and therefore not subject to an order to appear.

8. Plaintiff also challenges the examiner's refusal to accept evidence that IRS later held meetings to clarify its travel practices and rules of conduct. But such steps by management may well have been prompted by plaintiff's own flagrant example and would not have any significant bearing on his subjective understanding of the requirements—particularly in the light of his obviously unreliable testimony at the hearing.

There is, in addition, a sally against the examiner's impartiality but we find the charge to be frivolous, and unworthy of specific answer.

9. The Commission upheld the penalty even though it rejected two of the six charges, including the most flamboyant one, *i. e.* that plaintiff had acted improperly in Toronto in seeking female companionship. *See* footnote 1, *supra*.

10. *Power v. United States*, 209 Ct.Cl. 126, 531 F.2d 505 (1976), is distinguished in *Rifkin v. United States, supra*, on grounds which are equally applicable here.

al was within the range of permitted penalties. Neither the agency nor the Civil Service Commission abused its discretion.[11] Contrast *Boyce et al. v. United States*, Ct. Cl., 543 F.2d 1290, decided this day. It is immaterial that others would not have imposed the extreme sanction. *See Rifkin v. United States, supra.*

For these reasons, plaintiff's motion for summary judgment is denied and the defendant's motion is granted. The petition is dismissed.

11. We are satisfied that, if the first two grounds stood alone, the same sanction would have been justified, and would have been imposed and upheld on the record made with respect to those charges. *See* footnote 1, *supra.*