Richard J. HARVIN

v.

The UNITED STATES.

No. 167–80C.

United States Court of Claims.

Sept. 23, 1981.

---

Before COWEN, Senior Judge, and KUNZIG and BENNETT, Judges.

## ON THE PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT

COWEN, Senior Judge, delivered the opinion of the court:

Plaintiff, a former Immigration Inspector with the Immigration and Naturalization Service (INS) of the Department of Justice, was removed from his employment because of the agency's determination that he had submitted materially false travel vouchers and that he had failed to comply with INS regulations, instructions, and policy. Plaintiff appealed the decision to the Merit Systems Protection Board (Board), which upheld the agency decision.

Plaintiff brought this action under the Back Pay Act, 5 U.S.C. § 5596 (1976), requesting that the adverse administrative decision be set aside and seeking reinstatement and back pay. We find that the Board committed a procedural error which may have prejudiced plaintiff's rights, and that two of the seven charges involving falsification of plaintiff's travel vouchers were based on an erroneous legal standard. For these reasons, we remand the case to the Board. Upon the administrative record as it now exists, we find that the Board's decision on five of the charges involving the falsification of plaintiff's travel vouchers and the two charges involving plaintiff's failure to comply with INS regulations has adequate evidentiary support. After remand, it will be necessary for the Board to determine whether its decision will be amended, and also whether plaintiffs discharge should be upheld.

Robert E. Greenberg, Washington, D. C., atty. of record, for plaintiff. Robert E. Deso, Washington, D. C., of counsel.

Sara V. Greenberg, Washington, D. C., with whom was Acting Asst. Atty. Gen., Thomas S. Martin, Washington, D. C., for defendant.

I.

Plaintiff had been employed by INS for more than 14 years. During the last 5 years of his tenure, and at all times relevant to this case, his official duty station was Port Everglades, Florida, in Broward County, on the south side of Fort Lauder-

dale. His residence is in Lauderhill, Florida, which is also on the south side of Fort Lauderdale.

On August 23, 1977, plaintiff was temporarily detailed to the INS district office at the Miami International Airport in Dade County, Florida, 25 miles south of Port Everglades and 30 miles south of Lauderhill. Plaintiff was required to establish a temporary residence in Dade County, near the airport, during the temporary detail. The detail to Miami was periodically extended until May 15, 1978, when he was suspended from active duty because of an indictment returned against him by a Federal grand jury.[1] On August 7, 1978, when he returned to active duty after the suspension, INS gave him 30 days' notice of its intention to dismiss him.

While he was on temporary detail at his duty station in Miami, plaintiff was authorized to claim reimbursement of not to exceed $43 per day for necessary subsistence expenses, in addition to claims for mileage incurred on official business in the use of his personal automobile. During the period from March 31, 1978, through April 26, 1978, plaintiff was the subject of an investigation by two INS criminal investigators, who maintained an intermittent surveillance of his activities. In reports dated June 23, 1978, and July 25, 1978, the agents contrasted plaintiff's reported expenses and claims for mileage with their observations and the statements of witnesses interviewed by them. These discrepancies form the basis of the falsification charges.

After plaintiff appealed his removal to the Board, a hearing on the merits was held on June 24, 1979, at which the testimony of an INS Assistant Regional Commissioner for Budgeting and Accounting, and an INS secretary responsible for timekeeping was heard. Plaintiff also called the two INS investigators as hostile witnesses, and testified in his own behalf. With the exception of Specification 2(e) of Reason I, which was overruled on procedural grounds, the Board

found that the remaining charges that plaintiff had falsified material facts in connection with his travel vouchers were supported by a preponderance of evidence. The same finding was made on the charges contained in Reason II (non-compliance with Service regulations). The Board also concluded that plaintiff's removal would promote the efficiency of the Service. His request for reconsideration was denied and thereafter, he filed suit in the United States District Court for the District of Columbia, which transferred the action to this court, pursuant to 28 U.S.C. § 1406(c).

II.

■ Plaintiff's first challenge to the validity of the Board's decision is based on constitutional grounds. He contends that much of the evidence which resulted in his removal was obtained in violation of the Fourth Amendment's guarantee against unreasonable searches and seizures.

During plaintiff's temporary detail in Miami, he regularly rented a motel room for which he paid $16.65 per day. In each of the vouchers in issue here, he claimed reimbursement, not only for the rental of the motel room, but for meals, dry cleaning and other subsistence expenses. In every instance, his travel voucher showed that he had incurred subsistence expenses in excess of the maximum allowance of $43 per day. Among the more serious charges against him were the accusations that he claimed reimbursement for subsistence during days when he was actually at his home in Lauderhill, or when he was away from Miami on either annual or sick leave.

After personally observing plaintiff's departure from the motel on Friday afternoons or Saturday mornings, the investigators placed paper matchsticks between the door and the door jamb of his room. In order to establish his whereabouts, they followed him from the motel to his home, and observed whether his car was parked at his home or at the motel on his return. They

---

1. The record is not clear what charges were contained in the indictment, but it was dismissed on the recommendation of the United States Attorney in favor of administrative action.

also saw plaintiff entering a friend's apartment in Fort Lauderdale on occasions, as well as his home. If the investigators found that a matchstick had not fallen from the door on a weekend when he had been followed to Lauderhill, they used this as an indication that he had not returned to his motel, except when they observed that a charwoman had entered the room. The investigators did not at any time enter plaintiff's room or his home to conduct a search, and they were specifically instructed to respect his privacy. No search warrant was obtained for the placing of the matchsticks and the motel management was unaware of the surveillance.

Relying on *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), plaintiff objected both during the preliminary proceedings before the agency and at the Board hearing, to the admission of any testimony evidence based on the matchstick surveillance on the ground that this activity constituted an unconstitutional search and seizure. The Appeals Officer who conducted the Board hearing took the objection under advisement, but ultimately overruled it and allowed the evidence to remain in the record.

In *United States v. Janis*, 428 U.S. 433, 447, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046 (1976), the Supreme Court declared that it had never applied the exclusionary rule to exclude evidence in a civil proceeding, Federal or state. Since that time, there has been some question whether the rule should be applied in non-criminal cases. However, a number of the courts have applied the rule in civil and administrative cases. *See Savina Home Industries v. Secretary of Labor*, 594 F.2d 1358 (10th Cir. 1979) and cases cited therein. This court also applied the rule in *Saylor v. United States*, 179 Ct.Cl. 151, 374 F.2d 894 (1967), which was decided some 10 years before *Janis*. For the purposes of this case, we therefore assume that the rule is applicable in civil cases. Proceeding on that assumption, we conclude, however, that there was no unlawful search in this case within the contemplation of the Fourth Amendment. The protection of the Fourth Amendment extends to people, not places. *Katz·v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In the recent case of *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979), the Supreme Court held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy. Here, the matchsticks were placed on the outside of the door leading into a public corridor. We think it is clear that plaintiff had no reasonable expectation of privacy which was invaded when the matchsticks fell after someone opened the door. Plaintiff's argument depends upon the erroneous premise that he had a property interest in the space between the door jamb and the door to his motel room. It is the privacy interest, and not the property interest which the Fourth Amendment protects, and here there was no "legitimate expectation of privacy" which was violated by the use of the matchsticks. The method used by the investigators was not particularized or limited to plaintiff. The use of the matchsticks simply told the investigators that if a matchstick remained in the door jamb, no one had entered the motel room during the particular time period involved. Had the maid employed by the motel to clean the room or any other person opened the door, the matchsticks would have fallen.

The facts before us are wholly unlike those in the cases relied upon by plaintiff. In *Silverman v. United States*, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961), the police conducted an electronic surveillance by inserting a speaking device into the heating duct of a house.[2] In *Saylor, supra*, there was a complete and thorough search of both plaintiff's house and his office. In *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), there was a complete search of an office,

---

2. *United States v. Michael*, 622 F.2d 744 (5th Cir. 1980), which was relied upon by plaintiff, was reversed in an *en banc* decision of the Fifth Circuit on May 11, 1981. *United States v. Michael*, 645 F.2d 252 (5th Cir. 1981).

including all the papers and documents therein. The facts here are more comparable to those involved in *Smith v. Maryland, supra.* There a pen register was installed in the office of the telephone company and the register recorded the numbers of telephone calls made by defendant (in a criminal case) in his home. The Supreme Court held that the defendant had no reasonable expectation of privacy in the phone numbers he dialed.

The matchstick evidence was therefore admissible. Even if we were to conclude that there was an unlawful search, we would nevertheless hold that plaintiff is not entitled to recover, at least on the present record. A review of the record convinces us that unless the Board's decision is substantially changed on remand, there is other evidence, including admissions by plaintiff, which is sufficient to sustain several of the serious charges against him.

### III.

Plaintiff's second attack on the Board's decision is based upon an asserted procedural error. Plaintiff claims that he was denied a fair hearing because of the Appeals Officer's refusal to allow the investigators to refer to their handwritten notes to refresh their recollection during cross-examination by plaintiff. During the course of their investigations, the investigators made extensive handwritten notes. The written reports which formed the basis of the charges against plaintiff were compiled from these handwritten notes. Plaintiff called the two investigators as hostile witnesses and undertook to cross-examine them as such. The written reports had been made available to plaintiff's attorney and during the cross-examination of one of the investigators, he stated that he could not answer questions propounded to him regarding the whereabouts of plaintiff on particular dates without examining his handwritten notes. After several attempts were made to have the investigator refresh his memory by consulting his notes, the Appeals Officer apparently lost patience with this time-consuming process and ruled that the witness would no longer be allowed to refresh his memory by examination of his handwritten notes. He declared that the witness should have refreshed his memory from his notes prior to his appearance at the hearing. The Appeals Officer also refused to make these handwritten notes available to plaintiff's counsel.

The applicable regulation, 5 C.F.R. § 772.-307(c)(3) (1978), provided as follows:

> An appeals officer of the Appeals Authority shall conduct the hearing and shall afford the parties opportunity to introduce evidence (including testimony and statements by the appellant, his representative, representatives of the agency, and witnesses), and to cross-examine witnesses. * * *

We conclude that the ruling of the Appeals Officer was a reversible procedural error, which might have seriously prejudiced plaintiff's defense. The investigators were hostile witnesses and the charges resulting in plaintiff's dismissal were largely based upon their reports. The refusal of the Appeals Officer to let plaintiff's attorney examine the handwritten notes and to use them in an attempt to prove discrepancies between the notes and the reports of the investigators was a violation of the purpose and intent of the above-quoted regulation. Plaintiff's right to cross-examine his accusers was rendered virtually meaningless. *Williams v. Zuckert,* 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963); *Hanifan v. United States,* 173 Ct.Cl. 1053, 354 F.2d 358 (1965).

Defendant argues that the Appeals Officer's denial in no way prejudiced plaintiff and that production of the investigators' handwritten notes would have only served to strengthen the case against plaintiff. However, the notes are not in evidence, and plaintiff is entitled to examine them to determine for himself whether there are material conflicts between the notes and the handwritten reports of the investigators or whether they contain additional information which might assist in his defense. The investigators admitted that the written reports were incomplete in that information in the notes was not set forth in the reports.

Under these circumstances, we think that the appropriate way to remedy the procedural error is to remand the case to the Board. *Williams v. Zuckert, supra.* Therefore, the case is returned to the Board with the following instructions:

If a written request therefor is made to the Board within 20 days after the date of this decision, the handwritten notes of the investigators shall be furnished to plaintiff or his attorney for examination for a reasonable period of time to be fixed by the Board. If plaintiff or his attorney desires a rehearing for the purpose of interrogating the investigators with the use of the handwritten notes, a written request therefor shall be made to the Board within 10 days after the period allowed for the examination of the notes. If such a request is made, the Board shall summon the investigators to appear at a hearing and shall permit plaintiff to cross-examine them as hostile witnesses and to use the handwritten notes for that purpose. Opportunity shall also be afforded plaintiff to offer the handwritten notes in evidence. If the investigators cannot be compelled to attend the rehearing or if for any other reason they are unavailable, the Board shall permit the plaintiff to offer the notes in evidence. Thereafter, the Board shall determine whether and to what extent its decision of April 20, 1979, should be revised or amended.

## IV.

Plaintiff's final contention is that the decision of the Board was arbitrary, capricious, and is not supported by substantial evidence. Since we agree with plaintiff with respect to two of the charges, we shall discuss them separately.

### A. *Furnishing False Information on Reimbursement Claims for Lunches.*

In Specifications 1(b) and 2(d) of Reason I, plaintiff was charged with knowingly furnishing false information in connection with his claims for lunches on April 3–6, 1978 and April 13–26, 1978. Plaintiff's vouchers showed that he spent $5, $6, or $7 for lunches on those dates. The evidence before the Board established that the cost of lunches where plaintiff regularly took his noon meal was $4 or less, and that plaintiff never left a tip in excess of 35 cents. The Assistant Regional Commissioner for Budgeting and Accounting testified that there were no regulations dealing with the question of what actually constitutes a "lunch," but that the position of the agency is that money expended for snacks is not allowable under the heading of a "lunch," because of a decision of the Comptroller General issued October 7, 1969. He did not know whether the decision had been published but he stated that the decision was not reduced to regulation form and was not contained in any regulation to which plaintiff had access. Plaintiff testified that his claim for lunches included not only the amount he spent at the restaurant for noon meals, but additional expenditures for food purchased in the afternoon at a snack bar or small restaurant. He also testified that he felt he was entitled to claim the amount spent for snacks as part of his lunch expenses. He further testified that the amounts claimed were actually spent by him and that he had never seen or had his attention called to the decision of the Comptroller General.

A copy of the unpublished decision of the Comptroller General dated October 7, 1969, is attached to defendant's motion for summary judgment. The decision was issued in response to a request by the Regional Fiscal Agent of the Forest Service, Department of Agriculture. The Comptroller General ruled that a Forest Service employee's expenditures for newspapers, candy, pop, coffee, and rolls, which were not consumed as a part of a regular meal, cannot reasonably be viewed as necessary expenses of subsistence.

There was no finding by the Board that plaintiff's testimony regarding his combined expenditures for lunches and snacks was not entitled to belief. However, the Board relied on the testimony regarding the Comptroller General's ruling and found that in view of plaintiff's tenure and experience in preparing travel vouchers he "would rea-

sonably have known that expenses for food and drink consumed in the afternoon after returning from lunch could not be included as part of the charges for lunch," and that plaintiff's claims for the additional charges for snacks were deliberate falsifications of his travel vouchers.

After a careful review of the evidence we conclude that the decision of the Board is not supported by substantial evidence and is erroneous as a matter of law. It appears that the Regional Fiscal Agent of the Forest Service was uncertain whether an employee's expenditures for snacks could be included as part of his expenses for lunches, and he felt that it was necessary to obtain a special ruling from the Comptroller General. We assume that since the Regional Fiscal Officer had the responsibility of auditing and approving the travel vouchers of Forest Service Employees, he was well versed in the travel regulations. If he was uncertain whether the cost of an employee's snacks was reimbursable as part of his lunch, it is unreasonable to expect that plaintiff should have known that he was not authorized to add the cost of his snacks to his charge for lunches. It is undisputed that the ruling was never included in a regulation or was otherwise made accessible to plaintiff, and that he had no knowledge of it. Under these circumstances, it was improper for the Board to impute knowledge of the Comptroller General's decision to plaintiff, to find that he should have known that the cost of the snacks was not reimbursable, and to hold that the additional charges claimed by him were deliberate falsifications of his travel vouchers. Accordingly, the Board's decision on specifications 1(b) and 2(d) of Reason I is set aside, and on remand, the Board shall determine to what extent its decision will be affected by the elimination of these two charges.

B. *False Claims for Subsistence While Plaintiff was at Home or on Annual or Sick Leave. Specifications 1(a), 2(a), 2(b), and 2(c).*

In Specifications 1(a) and 2(a) of Reason I, plaintiff was charged with submitting false claims for subsistence expenses for the maximum allowable amount ($43 per day) on Sunday, April 2, 1978, and Sunday, April 9, 1978, when he was actually at home in Lauderhill, having left the motel on Saturday, April 1 and Saturday, April 8. In Specification 1(a), plaintiff was also charged with claiming reimbursement for dry cleaning expenses on April 2, 1978, which had been actually incurred March 28, 1978, to avoid exceeding the maximum allowable subsistence expense for March 28, 1978.

The Board found that since the evidence showed that plaintiff failed to reveal that he had returned to his residence and had remained there for the weekends, he had falsified material facts on his travel voucher and that the charge regarding the dry cleaning expenses was also sustained by the preponderance of the evidence.

In connection with his claim for subsistence expenses on Sunday, April 2, 1978, plaintiff acknowledged in his written response to the INS that he had spent the weekend at his home, but at the hearing, he testified that he could not recall where he spent the nights of April 1 and 2, 1978. He gave substantially the same response and the same testimony regarding his claim for subsistence for Sunday, April 9, 1978. Plaintiff also testified that he thought he was entitled to claim the maximum subsistence allowance on each of the days he spent at his home after he had left the motel, because he had maintained the motel room and had actually incurred all of the subsistence expenses claimed in his vouchers.

In Specification 2(b) of Reason I plaintiff was charged for having falsely claimed subsistence of $43 per day for Friday, April 14, Saturday, April 15 and Sunday, April 16, 1978. The evidence established that plaintiff was granted sick leave on April 14; that he left his motel and did not return until Sunday, April 16. The Board found that since he had knowingly failed to furnish information showing that he was on leave status, he had thereby falsified material facts in connection with his claim for travel expenses.

Similarly, in Specification 2(c) of Reason I, plaintiff was charged with falsely claiming reimbursement for subsistence expenses of $43 per day for Monday, April 17 through Sunday, April 23, 1978. The evidence showed that he was absent from duty April 18 and 19, when he was on annual leave; that he was also absent from duty on April 20 and 21 when he was on sick leave. It was also established that he was at his residence in Lauderhill on April 19, 20, and 22, 1978. In his written response to the charges in the INS, plaintiff acknowledged that he had returned to his residence on April 20 and 21, while he was on sick leave, but at the hearing, he testified that he could not recall where he spent the nights of April 20 and 21, nor could he recall where he had spent the nights of April 22 and 23, 1978. The Board rejected his contention that he was unaware that he had no right to claim reimbursement for travel expenses when he had returned to his official residence while on annual and sick leave, and held that it was reasonable to assume that any employee with his experience would know that once he returned to his home he was no longer on travel status and, therefore, not entitled to reimbursement of travel expenses. Accordingly, the Board concluded that he had intentionally neglected to show on his voucher that he spent the days in issue at his home, because he knew that it would result in the disapproval of his claim.

After a review of all of the evidence in the administrative record and the Board decision, we find that the decision on Specifications 1(a), 2(a), 2(b) and 2(c) of Reason I is supported by substantial evidence. Plaintiff has challenged the Board decision on these Specifications on the ground that it has ascribed a presumption of guilt to plaintiff solely on the basis of his length of service. Plaintiff also argues that the INS had in effect charged him with criminal fraud and that in the absence of the unjustified presumption of guilt, the evidence before the Board was insufficient to establish the required proof of criminal intent. We reject both contentions. In *Wise v. United States*, —— Ct.Cl. ——, 603 F.2d 182 (1979),

a civilian pay case in which the employee was charged in making false and misleading statements, the court held that the standard of proof which is required in prosecutions for criminally false statements or perjury is not applicable in such cases. As previously stated, plaintiff had been employed by the INS for more than 14 years and held a position of responsibility. There were conflicts between plaintiff's response to the INS and his testimony before the Board. Also, his testimony was impeached in other respects. For all of these reasons, the Board was not required to give credence to his testimony that he was unfamiliar with the travel regulations and unaware of the fact that he was not entitled to claim reimbursement for subsistence on the days he spent at his residence. The facts here are similar to those in *Pascal v. United States*, 211 Ct.Cl. 183, 543 F.2d 1284 (1976). There, an employee with more than 5 years of service was charged with intentionally submitting false time reports and claims for per diem while in travel status. The court concluded in that case, as we conclude here, that the Board's conclusions regarding the credibility of the employee's testimony were fully sustained. The following portion of the court's opinion in *Pascal* is, we think, particularly applicable here:

> But it is not the principle of the government world that everything is permissible which is not specifically prohibited by regulation or statute. Much is left to the common understanding that work-time is for work and those activities directly related to work—not for personal recreation or personal concerns. Plaintiff, a GS–12 revenue agent of substantial experience, must have known this. We agree with the Appeals Examining Office that "Mr. Pascal has been an employee of the Federal Government for approximately five and one-half (5½) years. We find it beyond belief that an employee with 5½ years of service would believe that he could travel for his own personnal [sic] pleasure on government time." [211 Ct.Cl. at 188–89, 543 F.2d at 1287–88.]

## C. *False Claim for Mileage Costs While on Annual Leave.*

Specification 2(f) of Reason I charged that plaintiff claimed reimbursement for mileage expenses for the use of his privately owned automobile on May 1 and May 2, 1978, when he was in fact absent from duty and on annual leave each of those days. The charge was supported by plaintiff's time and attendance report, by his daily time sheet and by the testimony of the secretary of the Travel Control Branch in the Miami office. Plaintiff testified that he was on duty status on both days and submitted highway toll tickets in support of his claim. The Board concluded that the evidence regarding plaintiff's leave status was more credible than his testimony, and found that the charge was supported by a preponderance of the evidence. Since it is the function of the trier of the facts to resolve questions of credibility where the testimony is conflicting, we affirm the finding of the Board on this specification.

## D. *Non-Compliance with Service Regulations, Instructions and Policy.*

In Specification 1 of Reason II, plaintiff was charged with requesting reimbursement for expenses claimed to have been incurred while he was on official detail in Miami from March 8, 1978, through April 7, 1978, when the records show that he was on annual leave on March 17 and again on March 27. The INS travel regulations then in effect required that when leave of absence is taken by an employee in travel status, the exact hour of his departure from and return to duty must be shown on his travel voucher. The Board correctly found that plaintiff did not report any leaves of absence on his vouchers.

The second Specification under Reason II charged that plaintiff requested reimbursement of expenses claimed to have been incurred while on official duty in Miami from April 8, 1978, through May 7, 1978, when in fact the record shows that he was on either annual or sick leave on 7 of those days. He did not report any of his leaves of absence on his travel vouchers as required by the regulations. Plaintiff acknowledged that he failed to comply with the travel regulations in this regard, but stated that he thought this was unnecessary because the times when he was on annual and sick leave were recorded in the daily time and attendance reports in the District Office. He acknowledged that he committed a technical error in failing to indicate in his travel voucher when he was on annual or sick leave. The Board concluded that since he had been employed by INS for nearly 14 years and that during that time had been required to prepare numerous travel vouchers, it would not be accepted as an excuse that his negligence was due to ignorance.

In view of the undisputed evidence before the Board and plaintiff's admissions, we find that the decision on these specifications is also supported by substantial evidence.

## CONCLUSION

Plaintiff's motion for summary judgment is granted with respect to specification 1(b) and 2(d) of Reason I. With that exception, the parties' motions for summary judgment are denied without prejudice. The case is remanded to the Merit Systems Protection Board pursuant to 28 U.S.C. § 1491 and Rule 149 for further proceedings in accordance with this opinion. Court proceedings shall be stayed for a period of 6 months. The defendant's attorney shall advise the Clerk at 90-day intervals of the status of the proceedings on remand. The attention of both parties is called to Rule 150(d) which requires each party to file with the Clerk a notice after the final decision or action by the Merit Systems Protection Board on remand.