Robert L. CAMPBELL, et al.,*
Petitioners,

v.

DEPARTMENT OF TRANSPORTA-
TION, FAA, Respondent.

Appeal No. 83–1173.

United States Court of Appeals,
Federal Circuit.

May 18, 1984.

* The names of the petitioners in this appeal are    listed in the appendix.

Kenneth H. Stern, Denver, Colo., argued for petitioners.

Robert A. Reutershan, Washington, D.C., argued for respondent, J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Sandra P. Spooner, Asst. Director, and Lorraine B. Halloway, Washington, D.C., were on the brief.

Stephen C. Cooper and Steven Z. Cohen, Southfield, Mich., were on the brief for amicus curiae in support of petitioner.

Before MARKEY, Chief Judge, and FRIEDMAN, RICH, SMITH and NIES, Circuit Judges.

NIES, Circuit Judge.

This appeal is from a decision of the Merit Systems Protection Board (board) sustaining the removal of Robert L. Campbell and others by the Federal Aviation Administration (agency) from their positions as air traffic control specialists, Denver Air Route Traffic Control Center (DARCC), Longmont, Colorado. The grounds for removal were striking against the United States and absence without leave. We affirm.

*Background*

The general facts concerning the background of the strike called by the Professional Air Traffic Controllers Organization (PATCO) and the action taken by President Reagan are set forth in *Schapansky v. Department of Transportation, FAA*, 735 F.2d 477 (Fed.Cir.1984), and are incorporated herein by reference. Other facts pertinent to the issues considered herein are set out below.

None of the petitioners of this appeal, except Russell S. Root, reported for duty after August 3, 1981. Between August 7 and 19, the Chief of the Denver Air Traffic Control Center, Ralph Kiss, sent a notice of proposed removal to each petitioner after determining that the person had missed his/her deadline shift.

The removal notices each contained the following statement: "[Y]ou may reply to this notice personally, in writing, or both ... within 7 calendar days after you receive this letter." None of the petitioners made a reply affirming or denying the charges within the seven day period. Each, however, by letter, requested certain materials be sent; requested an extension of time within which to file a reply; and designated Michael Curtis of PATCO, Local 501, as his/her representative.

Kiss responded promptly in writing to each, denying the request for an extension and advising that "your response, if any, must be made in accordance with the letter of proposed removal."

On August 17, Kiss contacted Curtis, the designated representative, and notified him that oral responses could be scheduled by having individual controllers call the Center. No oral reply time was requested by any petitioner or Curtis after that call.

Petitioners were subsequently removed from their positions by the agency. Petitioners appealed to the Denver Regional Office of the MSPB, where their cases were consolidated. After a 5-day hearing, the presiding official issued a decision sustaining the removals.[1] Petitioners filed a joint petition for review with the full board, alleging numerous errors committed by the agency and the presiding official. The board rejected petitioners' arguments and affirmed the decision of the presiding official.

*Issues*

Petitioners here put forth positions which are addressed and rejected in other related cases decided today, including:

---

1. All petitioners were also held to be AWOL. With respect to petitioner Root, the presiding official found that, because he had notified the agency that he was ready, willing, and able to return to work on August 8, his non-duty, non-pay status after that date constituted an improper suspension. Accordingly, the presiding official ordered the agency to amend its records and to place Root in a duty and pay status from August 8 until September 2, the effective date of his removal. The full board agreed that Root had been illegally suspended during this period.

1. The agency committed error in invoking the crime provision to reduce the notice period to seven days. *See Schapansky*, at 486.

2. Petitioners were denied a full seven days to respond to the notice of proposed removal. *See Adams v. Department of Transportation, FAA*, 735 F.2d 488 at n. 3 (Fed.Cir.1984).

3. The MSPB improperly shifted the burden of proof to petitioners to prove that they were non-strikers. *See Schapansky*, at 482.

4. Petitioners were not on strike or AWOL after the presidential deadline of 11:00 a.m. (E.D.T.) on August 5, 1981, because confusion over the deadline shift rule caused belief that they could not return to work. *See Adams*, at 490–92.

5. Petitioners received disparate treatment as compared to controllers who returned to work prior to their deadline shift. *See Schapansky*, at 485.

6. The agency deprived petitioners of the opportunity to decide, up to the last minute, whether they would return to work by failing to inform petitioners of their individual deadlines. *See Adams*, at 491–92.

7. Petitioners' terminations were tainted by command influence, in that terminations were controlled by decisions of high Government officials, including the President, who usurped responsibilities specifically delegated to the agency. *See Schapansky*, at 486–87; *DiMasso v. Department of Transportation, FAA*, 735 F.2d 526 at 528 (Fed.Cir.1984).

8. Petitioners were illegally constructively suspended. *See Adams*, at 492–93.

9. Removal is not the mandatory minimum penalty for striking against the United States. *See Schapansky*, at 485–86.

Petitioners also raise the following issues which we address in this opinion:

1. Whether the agency committed error in not scheduling times for oral replies.

2. Whether the MSPB decision was tainted by improper *ex parte* communications and advisory opinions.

In addition, several petitioners raise issues based on the special circumstances of their individual situations, which we also treat below.

### Scheduling of Oral Reply Times

Petitioners assert procedural error by the agency in failing to schedule oral reply times. Petitioners contended that it was incumbent on the agency to set a reply time for each petitioner in view of their requests that a specific time be set. As proof of such specific requests, petitioners point to a standard request included in the requests for extension of time: "Please inform me specifically of the time and place such a personal presentation may be made and the date on which my written response is due."

Petitioners argue that since the agency had the names and addresses of all controllers, "it would have been a simple matter to send each of [the striking controllers] a letter scheduling a time for an oral response." Petitioners claim that the telephone call on August 17 from Kiss to Curtis indicating that it was each controller's responsibility to schedule oral presentations "was merely an attempt to correct the previous error that had already taken place, to-wit: the failure to schedule oral response as requested."

■ As the MSPB held, while the statute and regulations clearly provide for a right to make an oral response to agency charges, they do not require the agency to schedule replies *sua sponte*. Rather, it is incumbent on an employee to take the initiative in scheduling the time to exercise that right.

■ Further, the above-quoted request for scheduling reply times, on which peti-

tioners rely as an assertion of such right, is taken out of context. The opportunity for oral reply actually requested by the letter was *no earlier* than "20 days from the receipt of [requested] materials." An even later time was requested for written reply. *No request* was made for the agency to receive a petitioner's oral reply within the required seven day period set forth in the notice. Further, as held in *Dorrance v. Department of Transportation, FAA*, 735 F.2d 516 at 519–20 (Fed.Cir.1984), there was no obligation on the agency to extend the time for reply under the circumstances.

It appears that petitioners turned the scheduling of oral replies into a "cat-and-mouse" game, defeating the purposes intended by the statute in granting such right. The evidence of record indicates that attempts by Kiss to contact petitioners directly by telephone were fruitless. He was unable to reach petitioners' representative, Curtis, at his office and pursued him at home to raise the matter of oral replies. One person to whom he spoke directly refused to make an oral reply "on advice of counsel." We see no bad faith on the part of the agency in these efforts. On the other hand, Curtis had ample opportunity to request reply times within the seven day period and chose not to do so.

Finally, petitioners appear to raise a futility issue with regard to requesting oral reply times, arguing that "it would have been impossible for the agency to accomplish oral responses for all controllers within the time frame prescribed by Mr. Kiss." Kiss, on the other hand, testified that all oral replies would have been heard. We need not consider this hypothetical situation. The fact is that no requests for oral reply times within the seven day period were made.

For the above reasons, we therefore agree with the board that petitioners have failed to demonstrate any procedural error in the agency's handling of the oral response requests.

### The Ex Parte Communications and Advisory Opinions by the MSPB

Petitioners allege the occurrence of improper *ex parte* communications between Special Presiding Official Kenneth Goshorn and agency representative Diane R. Liff on February 23–24, 1984. Petitioners' representative notified the board of the communications by letter dated March 7, 1983. After a thorough investigation, the board's Ethics Officer determined that the conversations were procedural in nature, did not relate to the merits of a board appeal, and, therefore, did not constitute a prohibited *ex parte* communication under 5 C.F.R. § 1201.102. The full board concurred in that determination.

Petitioners, in their reply brief, admit that the *ex parte* communications in issue are themselves insufficient to warrant reversal of the board's decision. Rather, they request that the incident be considered along with "other due process violations" that occurred.

The "other due process violations" petitioners delineated are the promulgation of "advisory opinions" by the General Counsel's office of the MSPB. In response to an FOIA request, petitioners obtained copies of legal memoranda which were sent by the board's General Counsel to the board's then Acting Assistant Managing Director for Regional Operations and which were transmitted to regional directors under cover of a memorandum which identified the enclosures as "Advisory Opinions from Office of General Counsel."

Petitioners' contention is that the "creation, circulation and incorporation" of advisory opinions violates 5 U.S.C. § 1205(g).[2] According to petitioners, "[F]or the Board to pre-determine the resolution of a number of legal issues violates [their] right to meaningful review."

*The Board shall not issue advisory opinions.* All regulations of the Board shall be published in the Federal Register. [Emphasis added.]

---

**2.** 5 U.S.C. § 1205(g) reads:

(g) The Board shall have the authority to prescribe such regulations as may be necessary for the performance of its functions.

In the subject memoranda the General Counsel addressed the issues of:

1. Challenges to the constitutionality of 5 U.S.C. §§ 3333 and 7311(3) and the board's power to pass on constitutional questions.
2. Whether first amendment rights of controllers were violated.
3. Whether disputes over pay, safety, and working conditions justified the strike.
4. Whether violation of 5 U.S.C. § 7311(3) requires removal.
5. Whether presiding officials can take "official notice" of the strike.

The memoranda contain analyses of the pertinent case law and legal commentary and, in some instances, state the author's conclusions. The transmittal memorandum from the Assistant Managing Director advised presiding officials that they were "not obligated" to follow the analysis, stating: "Indeed, presiding officials are responsible for conducting their own research of the issues...."

▆ We agree with respondent that 5 U.S.C. § 1205(g) does not prohibit the General Counsel from issuing legal memoranda reflecting research into common issues in these proceedings.[3] Indeed, under 5 C.F.R. § 1200.10(c), the primary function of the Office of General Counsel is to provide "legal advice to the Board and its staff," which necessarily includes the Office of the Managing Director and the field offices. That some presiding officials adopted part of the language from the memoranda does not indicate an abdication of their responsibilities or dictation of result by the General Counsel's Office.

In any event, the thrust of 5 U.S.C. § 1205(g) appears to be to prohibit the board from *issuing* advisory opinions to the public, a prohibition comparable to the prohibition against federal courts issuing advisory opinions, and in contrast to other agencies which are authorized to issue advisory opinions as a guide to future conduct. A violation by action of this nature is not asserted by petitioners.

For these reasons, therefore, we affirm the decision of the board that these procedural issues are meritless.

### Individual Fact Situations

*Russell S. Root*

Root was originally scheduled for annual leave from August 1 through August 6, had regular days off on August 7 and 8, and was, therefore, due to return to work on August 9. Before the presiding official, the agency introduced a telephone memorandum, as well as the testimony of Kiss, indicating that on August 2, 1981, Root's supervisor, Gutenberg, had called Root's home and informed Root's wife that Root's leave had been cancelled, and that Mrs. Root had agreed to forward the message to her husband.

In a subsequent conversation on August 4, Kiss spoke directly with Root and requested that he return to work but Root said he could not do that. Cancellation of annual leave was admittedly not discussed during this conversation.

On August 8, 1981, petitioner Root called Kiss and requested to return to work on August 9.[4] Kiss refused this request, indicating to Root that he had missed his agency deadline for returning to duty on August 6.

Root asserts that the agency has failed to present any evidence indicating that he actually received word from his wife that his annual leave had been cancelled; moreover, he "does not concede" that the phone call to his wife was even made.[5] He dis-

---

**3.** In a motion for remand, petitioners appear to concede that the General Counsel's memoranda were not *per se* unlawful but sought remand to determine if some presiding officials were unduly influenced.

**4.** As mentioned in n. 1, since Root indicated a willingness to return to work, the board found his suspension to be unlawful, and ordered that he be placed in a duty and pay status from August 8 until his removal on September 2.

**5.** Root also argues that his leave was not properly cancelled. The propriety of the agency's cancellation of annual leave is affirmed in *Letenyei v. Department of Transportation, FAA,* 735 F.2d

counts all evidence presented on this issue as hearsay.

■ The board considered Root's argument but found it unpersuasive. Root never denied receiving the message from his wife. We believe the board was correct in drawing an adverse inference from Root's failure to testify and contest the evidence presented by the agency. *See Adams,* at 492–93.

■ With regard to Root's hearsay argument, we note that it does not appear that counsel for Root objected to the introduction of the evidence at issue. But, in any event, hearsay evidence is admissible and may be sufficient in board proceedings. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Peters v. United States,* 187 Ct.Cl. 63, 408 F.2d 719 (1969). *See also, Dorrance,* at 517–18.

*David Gold*

Petitioner Gold seeks reversal of his removal on the basis of a defective notice of proposed removal. The notice of proposed removal sent by Kiss to Gold on August 18 indicated that he was being charged with striking and with being AWOL beginning at 3:15 p.m. on August 13. At the hearing, Kiss admitted that he had learned subsequently that Gold's Time and Attendance Record, on which he based the notice, was in error and that Gold had, in fact, been on pre-approved spot leave through August 16. The board noted that Gold did not dispute that August 17 was his deadline, and upheld his removal solely on the basis of his failure to report on that date.

Gold claims that because of the "defective" notice of proposed removal, he was given no advance notice of the "real" reason for his termination. Gold points to 5 U.S.C. § 7513(b)(1) which requires an agen-

cy to state, in a notice of removal, "the specific reasons for the proposed action."

■ Contrary to Gold's view, a notice of proposed removal or removal notice which contains charges which are not sustained is not "defective." An adverse action may be sustained even though not all charges on which the action is stated to be based are sustained. *See, e.g., Pascal v. United States,* 543 F.2d 1284, 1289, 211 Ct.Cl. 183 (1976). The question here is whether the notice adequately apprised Gold that he would have to defend the charge of striking on August 17, the ground on which the action was sustained. Viewed this way, there is no question but that he was advised that his removal was proposed for participation in a strike against the United States during a period which specifically included August 17. Gold was, thus, well aware that he would be required to explain his absence from the facility on that date and raises here no valid defense to that charge.[6] Proof of one day of striking was entirely sufficient to warrant removal.

■ We hold that the agency notice supplied sufficient information upon which Mr. Gold could make an "informed reply."

*Thaddeus W. Wallace*

■ Petitioner Wallace was on approved annual leave and days off from August 1 through August 12. The agency attempted, but was unable, to contact Wallace to cancel his annual leave. Kiss testified at the hearing that, on August 10, Wallace telephoned his supervisor, Hodges, and stated that he was aware of the strike and would return to work on August 11. Wallace failed to report for work on the 11th or on the 13th, his next scheduled shift after the expiration of his authorized leave. He was charged with strike participation and

---

528 (Fed.Cir.1984). Unlike Letenyei, Root offered no testimony that he was not a striker, so that remand is not appropriate.

**6.** Before the MSPB, Gold asserted that the strike ended on August 5. However, based on the evidence, the MSPB held that the strike continued at least through August 17, 1981 at the

DARCC. Substantial evidence supports that finding. The elimination of some dates did affect the days for which Gold could be charged as being AWOL and receive no pay. No complaint is raised here that he did not receive the amounts due as a result of the correction in his record.

absence without leave from August 13 through August 19. The MSPB upheld the removal on the basis of his absence on August 13.

As we stated previously with respect to Gold, substantial evidence supports the board's finding that the strike lasted at least through August 17, and Wallace's absence on August 13 is unexplained. We therefore affirm the board's finding that the agency established a *prima facie* case of strike participation by Wallace on August 13.

Wallace's specific argument appears to be that Kiss's testimony could not establish his actual awareness of the strike on August 11. There is no indication that the board relied on this testimony and no explanation by petitioner how exclusion of the testimony would have affected his case.

### Conclusion

For the reasons stated herein and in the related cases decided today, the decision of the Merit Systems Protection Board affirming the removal of petitioners is *affirmed.*

AFFIRMED.

### APPENDIX

ISIAH BAILEY
PETER J. BAKER
RICK W. BAWEK
BARBARA I. BICKFORD
WILLIAM R. COLLIER
DENNIS L. DOWSE
RICHARD B. DUNCAN
STEPHEN G. FINCHER
DAVID GOLD
GILBERT R. GULICK
DAVID C. HARRISON
JOHN F. HAYES, JR.
TIMOTHY F. HIPSHER
FREDERICK L. HOOD
JAMES R. HUME
ROBERT M. KEBARTAS
TERRY T. KELLING
KEITH T. KEMPTER
LESLIE H. KLAHN, JR.
ROBERT E. KOVACH
LAWRENCE J. KRAUSS
JOSEPH J. KREUZER
BRADLEY P. LIGHT
BRUCE C. MEACHUM
DANNY M. MITCHELL
RODNEY P. MICHAELS
TERESA M. MICHAELS
BARTHOLOMEW H. MUNOZ
MICHAEL M. MURPHY
MICHAEL A. NORD
ROBERTS M. O'GRADY
DARRELL G. OTTERSBERG
EDWARD E. PHILLIPS
ROGER E. PRICE
THOMAS A. PUTNEY
SHANNON K. REDDING
RUSSELL S. ROOT
ALFRED SAENZ
JAMES L. SCHILTHUIS
DAVID W. SHALLCROSS
JERRY W. SOUKUP
JAMES T. SPINUZZI
DARREL L. TAYLOR
PAULA J. VAN DUSEN
ROBERT L. VAN DYKE
PAUL D. VAUGHAN
MICHAEL J. VIOLETTE
THADDEUS W. WALLACE
RICHARD D. WALLER
ROBERT E. WARD
THOMAS G. WEIMER
DEBRA J. WILLIAMS