**Anthony L. DiMASSO, Petitioner,**

v.

**DEPARTMENT OF TRANSPORTA- TION, FAA, Respondent.**

**Appeal No. 83–1158.**

United States Court of Appeals, Federal Circuit.

May 18, 1984.

Renee G. Mayer, Mineola, N.Y., for petitioner.

Diane R. Liff, Washington, D.C., for respondent.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director and Sandra Spooner, Washington, D.C., were on the brief, for respondent.

Before MARKEY, Chief Judge, FRIED- MAN, RICH, SMITH and NIES, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

Petitioner Anthony L. DiMasso (DiMasso) appeals from a decision of the Merit Systems Protection Board (board), affirming the decision of the Department of Transportation's Federal Aviation Administration (agency) to remove DiMasso from his position as air traffic controller specialist at the New York Air Traffic Control Center in Ronkonkoma, New York. We affirm.

*Background*

General background concerning the facts and issues arising from the agency's removal of air controllers who participated in an illegal strike is set forth in *Schapansky v. Department of Transportation,* 735 F.2d 477 (Fed.Cir.1984), and *Adams v. Department of Transportation,* 735 F.2d 488 (Fed.Cir.1984), issued this day. In DiMasso's case, DiMasso was on annual leave between August 2 and 9, 1981, and was scheduled to return to his 4 p.m. shift on August 9. When he failed to do so, the agency served him the next day with a notice of proposed removal, alleging participation in an illegal strike and absence without leave. DiMasso responded on August 13 and 14, 1981, requesting an extension of time, excepting to application of the statutory crime provision, and requesting certain additional information. He did not, however, either at this point or subsequently in the proceedings, offer reasons or evidence for his failure to return to his scheduled shift on August 9. The agency removed DiMasso effective August 27, 1981, and he appealed to the board which,

in an initial consolidated decision by the presiding official dated October 14, 1982, affirmed the removals of all but one of the air controllers whose removals from the New York Air Traffic Control Center were considered.[1] DiMasso appealed to the full board which, in a final consolidated decision issued April 25, 1983, likewise affirmed his removal.[2] DiMasso now exercises his right to appeal to this court.

### Issues

DiMasso has raised numerous issues before this court, including: (1) that the agency failed to sustain its burden of proof as to every element of the charges; (2) that the board erred in shifting the burden of persuasion once the agency had shown a prima facie case of strike participation; (3) that the agency introduced only hearsay evidence insufficient to make a prima facie case; (4) that the board erred in drawing an adverse inference from DiMasso's silence; (5) that the agency erred in applying an emergency suspension; (6) that the agency erred in allowing DiMasso less than 7 days to respond to the notice of removal; (7) that the penalty of removal did not promote the efficiency of the service; (8) that the penalty should be mitigated; (9) that the deadline shift rule created such confusion as to cause the agency's burden of proving strike participation to rise; (10) that the agency erred in failing fully to apprise DiMasso of his constitutional right against self-incrimination; and (11) that the President's edict and cabinet level orders to the proposing and deciding officials improp-

erly influenced DiMasso's removal, causing harmful error. Except for the last two issues, this court has thoroughly considered and rejected those arguments in other cases decided today.[3] Those decisions control, and we address the remaining two issues here.

### Opinion

#### 1. *Duty to Advise on Self-Incrimination*

DiMasso contends that the agency committed harmful error by failing fully to apprise him of his constitutional right against self-incrimination under the fifth amendment. In support of such duty by the agency he cites a memorandum dated June 4, 1980, by then-Attorney General Benjamin Civiletti, outlining general guidelines for procedures in administrative investigations of certain employee misconduct and discussing the necessity for warnings on fifth amendment rights to prevent loss of evidence. Need for the memorandum arose, as it states in its first sentence, from "the need to coordinate with the Criminal Division [of the Department of Justice] certain actions that may impact adversely on the prosecution of criminal cases arising out of the same or parallel facts." Specifically, the Attorney General was concerned that improper agency procedures during administrative investigations of employee misconduct would result in statements and evidentiary leads arising from those investigations subsequently be-

---

**1.** The board's presiding official found that a preponderance of the evidence did not support the charge of striking for one controller who had been on sick leave. *Adams v. Federal Aviation Admin.,* MSPB Initial Decision No. NY075281F0424 (Oct. 14, 1982). The agency did not contest that finding.

**2.** *Adams v. Department of Transp.,* MSPB Docket No. NY075281F0424 (Apr. 25, 1983), 1983 FMSR 7019. The full board found that the agency failed to establish by a preponderance of the evidence that two controllers involved in that appeal participated in a strike and were absent without leave, because opposing evi-

dence indicated that they were on jury duty under court leave at the time.

**3.** In the order to which they relate to each issue enumerated above, those cases, likewise entered today, are: (1) *Schapansky v. Department of Transp.,* 735 F.2d 477 (Fed.Cir.1984); (2) *Schapansky;* (3) *Dorrance v. Department of Transp.* (Fed.Cir.1984); (4) *Adams v. Department of Transp.,* 735 F.2d 488 (Fed.Cir.1984); (5) *Schapansky; Novotny v. Department of Transp.,* 735 F.2d 521 (Fed.Cir.1984); (6) *Adams;* (7) *Schapansky; Johnson v. Department of Transp.,* 735 F.2d 510 (Fed.Cir.1984); (8) *Schapansky;* and (9) *Adams.*

ing held inadmissible as evidence in a criminal prosecution of that employee.

 In DiMasso's situation, his opportunity to respond to a notice of proposed removal *did not reach the level of a custodial interrogation*. He was not compelled to give testimony as a *quid pro quo* for retaining his job; he was free to deny participation in an illegal strike but chose not to do so. Moreover, even if one were to assume that the Attorney General's memorandum was binding (which it was not), then the probable consequences of an agency's failing to follow that document would be felt not in these civil removal proceedings but in any subsequent criminal investigation.[4] We affirm the board in its rejection of DiMasso's position on the duty to advise.

### 2. *Influence from Above*

DiMasso also contends that the President's statement on August 3, 1981, that striking air controllers who had not returned to work by 11 a.m. August 5, 1981, would be fired, preempted the authority of the board's presiding official and "improperly aborted" the statutory and regulatory removal procedures. He contends as well that follow-up orders by the Secretary of Transportation and others confirming and detailing the President's position likewise predetermined the outcome of his case, making it, in effect, a sham. In DiMasso's view these procedures, directed from the "top down," constituted harmful error.

 In *Schapansky*, we considered DiMasso's contention, along with the more specific charge that the President's announcement in effect deprived individual controllers of a meaningful opportunity to reply to the proposed removal, and do not repeat that discussion here. We note that in the cases of certain controllers who denied the striking charges and presented

evidence thereof, the board's consideration resulted in reversal of the agency's position.[5] We reiterate as well that this court is bound by Court of Claims precedent,[6] which has held that there is "nothing improper" about an agency's predetermining the penalty of removal, provided that the employee has full opportunity to present facts rebutting the charges.[7] DiMasso chose not to present evidence rebutting the charges of illegal strike participation and absence without leave; he instead chose to respond with "a blast of procedural objections."[8] Having rejected those objections, we affirm the board's decision upholding the agency's removal of DiMasso.

AFFIRMED.

---

**4.** *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

**5.** *See, e.g.,* notes 1 and 2, *supra.*

**6.** *South Corp. v. United States,* 690 F.2d 1368, 215 USPQ 657 (Fed.Cir.1982).

**7.** *Pascal v. United States,* 543 F.2d 1284, 1289, 211 Ct.Cl. 183 (1976).

**8.** *Id.* at 1288.