*91 ORDER AFFIRMING TRIBAL COUNCIL’S FINDINGS AND OPINION
KATHARINE ENGLISH, Chief Judge.
This matter came before the Court on Reyn Leno’s Notice of Appeal to the Trib *92 al Court from an Order of the Tribal Council.
ISSUE PRESENTED:
In the underlying proceeding held before the Tribal Council, the Council determined that its Vice-Chairman, Reyn Leno, had violated Tribal Ethical Standards Ordinance § 275(c)(l)(B)(9) by using his “position to ‘coerce, threaten or intimidate a person or group to provide financial benefit or other personal gain to [himjself or another person with whom [he] has family, business or financial ties, or any other purpose^]’ ” (Findings and Opinion 5). Specifically, the Council found that Vice-Chairman Leno “used his position on Tribal Council to intimidate, coerce and threaten the current and former Finance Officers into making decisions favorable to his wife.” (Findings and Opinion 5). As a sanction, the Council suspended Vice-Chairman Leno from the Council for two months without pay. Vice-Chairman Leno appeals to this Court, contending that certain of the Council’s findings are arbitrary and capricious, that he was deprived of due process and that, in any event, this Court has discretionary authority to vacate the findings and opinion of the Council and that the Court should do so here.
For the reasons that follow, the Court rejects each of those contentions.
BACKGROUND:
The proceeding before the Council began on June 9, 1999, when Tribal Member Valorie Sheker filed a complaint against Vice-Chairman Leno. Her complaint alleged that he had used his position as a Council Member to influence, harass, and threaten various Tribal employees intending to gain favorable treatment for members of his family who are also employed by the Tribe.
On June 22, 1999, the Council sought a more specific statement of the allegations from Ms. Sheker, along with a witness list. She provided those on July 10th. The additional information was sent to Vice-Chairman Leno on July 12th. His response to the allegations originally was due on July 27th but, at his request, he was given until August 10th to answer. Prior to that date, on July 29th, the Council again, at Vice-Chairman Leno’s request, asked Ms. Sheker to clarify some portions of her complaint. She did so by August 4th. Vice-Chairman Leno’s response was received on August 10th.
On August 11, 2000, the Tribal Council advised the parties that the hearing on this matter would be held on August 18th. The day before the scheduled hearing date, Vice-Chairman Leno asked the Council for a 30-day continuance because his attorney was not available on the scheduled date. The Council denied his request.
At the hearing held on August 18, 1999, Vice-Chairman Leno again requested a continuance, but stated he would proceed without his attorney if necessary. The Council voted to proceed with the hearing. Vice-Chairman Leno cross-examined the complainant’s witnesses, called his own witnesses, presented exhibits, and made his own statements and arguments.
After the hearing, the Council requested that some written testimony be submitted. The parties were given time to respond to that information, but neither did. On September 14, 1999, the Tribal Council issued its Findings and Opinion, concluding that Vice-Chairman Leno had used his position as a Council member to “threaten, coerce and intimidate” Tribal employees into giving preferential treatment to his wife. Vice-Chairman Leno then appealed to this Court.
Tribal Council’s Findings of Fact. At 275(c)(2)(J)(l) the Ordinance states that “The evidentiary findings of the Council shall be accepted by the Court as final, *93 unless such findings are arbitrary and capricious.” Although Vice-Chairman Leno questions the evidentiary sufficiency of some of the Council’s factual findings—an issue the Court discusses below—the Court nevertheless bases its statement of the facts on the facts as found by the Council. The Council’s factual findings provide a background that helps to explain the issues raised on judicial review and the findings also provide insight into the Council’s reasoning and its ultimate conclusion that Vice-Chairman Leno violated the Ethics Ordinance.
The Council found that “[a]t least three different witnesses testified to Vice-Chairman Leno’s intervention in employee matters during the past two years.” (Findings and Opinion 3). Those three witnesses were Mr. Randy Dugger, the Casino’s Food and Beverage Manager, Ms. Pat Mercier, the Tribe’s former Finance Officer, and Mr. Bob Saunders, the current Finance Officer. According to Mr. Dugger, Mr. Leno met with him to discuss scheduling issues shortly after Mr. Dugger had told Mr. Leno’s son, Dustin, that he would have to wait for a shift change that Dustin had requested. After the meeting with Vice-Chairman Leno, Mr. Dugger felt that “it would be in [his] best interest to expedite [Dustin’s] schedule change as quickly as possible.” Ultimately, because of some uncertainty as to whether the meeting between Mr. Dugger and Vice-Chairman Leno had taken place too long ago for the Council to consider it, the Council did not rely on Mr. Dugger’s testimony in reaching its conclusion or in imposing a sanction on Vice-Chairman Leno.
The next witness mentioned in the Council’s findings is Ms. Pat Mercier, the former Finance Officer. Ms. Mercier testified that Vice-Chairman Leno “repeatedly” questioned the choice of who would run the Member Benefits Program and that, “after over a year of harassment by Mr. Leno about who was doing the program,” Mr. Leno’s wife was transferred in to assist in administering the program. Ms. Mercier also testified that Mr. Leno intervened in pay disputes and performance issues involving his wife by going directly to the Executive Officer who then would tell Ms. Mercier how to handle the issue. The final witness of the three, Mr. Bob Saunders, the current Finance Officer, testified that Vice-Chairman Leno had questioned him about giving Mr. Leno’s wife her own office. Mr. Saunders said that he was very disturbed when Mr. Leno “held up two papers and informed [Mr. Saunders] that the Finance Department already had two jobs approved but was ‘going to have a hard time getting anything else done.’ ” (Findings and Opinion 4). Mr. Saunders also testified that Vice-Chairman Leno had asked him about the qualifications for the Member Benefits Manager position and that, when told Ms. Valorie Sheker might qualify based on prior experience rather than education, as provided in the Tribe’s personnel policies, Mr. Leno responded that such policies could be changed. Based on its findings, the Council concluded that:
“Vice-Chairman Leno repeatedly interfered with employee matters related to the Member Benefits Program. We also find that Vice-Chairman Leno used his position on Tribal Council to intimidate, coerce and threaten the current and former Finance Officers into making decisions favorable to his wife. In particular, we find Vice-Chairman Leno’s statement to Bob Saunders regarding difficulty in ‘getting anything else done’ a threat and a deliberate attempt by Vice-Chairman Leno to get office space for his wife. Using one’s position to ‘coerce, threaten or intimidate a person or group to provide financial benefit or other personal gain to oneself or another person *94 with whom one has family, business or financial ties, or any other purpose,’ is an abuse of power and an actual or apparent impropriety as defined in the Ethics Ordinance. Tribal Code § 275(c)(l)(B)(9). We therefore find that Vice-Chairman Leno committed an actual or apparent impropriety in violation of the Ethics Ordinance.”
(Findings and Opinion 5-6). Based on that conclusion, the Council determined that a sanction was appropriate, and the Council later imposed a sanction of a two-month suspension, without pay, from the Council.
STANDARD OF REVIEW
The Tribal Ethical Standards Ordinance provides that:
“(I) The Tribal Court shall hear appeals of the issuance of such sanctions by the Council, provided, however, the Court’s jurisdiction is limited to determining whether the action taken was arbitrary and capricious, in violation of the Tribe’s Constitution or of the Indian Civil Rights Act.”
“(J) The appeal must be filed within thirty (30) days of the Council’s determination.”
“1. The evidentiary findings of the Council shall be accepted by the Court as final, unless such findings are arbitrary and capricious.”
§ 275(c)(2)(I)(J) (emphasis in original).
The Tribe argues that those provisions mean that the Court can review only the sanction imposed by the Council and nothing more. The Court disagrees with that reading of the ordinance.
It is true that the imposition of a sanction by the Council is a necessary prelude to judicial review. Unless a sanction is imposed, judicial review is not available. The Court has so held in a prior case. Andrew M. Jenness v. Kathryn Harrison (aka in the Matter of Kathryn Harrison), 2 Am. Tribal Law 78, 1999 WL 34966388 (1999). It does not follow, however, that if a sanction is imposed, the Court’s review is limited to consideration of the sanction only. Instead, the Court may determine whether “the action taken was arbitrary and capricious, in violation of the Tribe’s Constitution or of the Indian Civil Rights Act.” The Tribe reads the term “the action taken” to refer' only to the sanction. That reading is not convincing. First, the line that the Tribe attempts to draw between the sanction and the proceedings that led to the imposition of a sanction is not as clear' as the Tribe suggests. For example, imagine that a sanction were based on no facts at all or1 on the bald admission that no violation of the Ethics Ordinance had been found. Even if “the action taken” referred only to the sanction, in such a case the Court would have to conclude, based on the clear absence of any factual support for the action, that it was arbitrary and capricious. Thus, it simply is not possible to consider whether' a sanction is arbitrary or capricious without considering the proceedings that led to and the factual findings that underlie the imposition of the sanction.
That conclusion also is supported by § 275(c)(2)(J)(l), which specifically provides that the Court is to accept the Council’s factual findings as being final, unless “such findings are arbitrary and capricious.” That provision becomes meaningless unless it is read to allow the Court to review the Council’s findings of fact.
That the Court is not limited to reviewing the Council’s factual findings does not mean, however, that the Court is free to substitute its judgment for that of the Council or that the Court’s standard of review is not a limited one. The ordinance explicitly provides for an “arbitrary and capricious” standard of review. Such a *95 standard of review “is narrow and the reviewing Court may not substitute its judgment for that of the agency” (here, the Council). O’Keeffe’s, Inc. v. U.S. Consumer Product Safety Commission, 92 F.3d 940, 942 (9th Cir.1996). “A decision is arbitrary and capricious if an agency ‘has relied on factors which Congress [here, the Tribe] has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.’ Motor Vehicle Mfrs. Ass’n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).” O’Keeffe’s, 92 F.3d at 942. Here, the pertinent aspects of the inquiry appear to be whether the Council offered an explanation for its decision that “runs counter to the evidence” and whether its decision is “so implausible that it could not be ascribed to a difference in view.”
Vice-Chairman Leno argues, however, that with respect to evidentiary matters, the “arbitrary and capricious” standard of review is the same as the “substantial evidence” standard (the latter of which has been described as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion Adorno v. Shalaln, 40 F.3d 43 (3rd Cir.1994).) For that proposition he relies solely on a footnote taken from a federal appellate Court decision. Bangor Hydro-Elec. v. Fed. Energy Regulatory Com’n, 78 F.3d 659, 663 n. 3 (D.C.Cir.1996). The footnote supports his position (although the case was not decided under the federal APA), id., but the Court does not accept the suggestion that “arbitrary and capricious” is synonymous with “substantial evidence” or that this Court is entitled to conduct a substantial evidence review here. The more common understanding, which this Court shares, is that substantial evidence review is less limited and deferential than is review under an “arbitrary and capricious” standard. See FCC v. Nat. Cit. Comm. for Broadcasting, 436 U.S. 775, 802-03, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978) (contrasting the two standards of review); Abbott Laboratories v. Gardner, 387 U.S. 136, 143, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (review “with a ‘substantial evidence’ test [affords] a considerably more generous [i.e., less constrained] judicial review than the ‘arbitrary and capricious’ test”)
The Court has previously examined this standard in Brandon v. Tribal Council for the Confederated Tribes of the Grand Ronde, Community of Oregon, 18 ILR 6139 (1991), which case also involved review of a Tribal Council findings and opinion regarding an ethics violation. The Court stated: “Under an arbitrary and capricious standard, great deference is given to the Council, and its decisions should not be set aside by the Court unless the evidence heard before the council was clearly insufficient to support its decision.”
Therefore, the Court will review Vice-Chairman Leno’s challenges to the Council’s factual findings using the limited “arbitrary and capricious” standard; the Court will not conduct a review for substantial evidence.
ANALYSIS:
The Council’s findings are not arbitrary and capricious.
Vice-Chairman Leno contends that the Council improperly relied on the testimony of Randy Mr. Dugger, Ms. Pat Mer-cier and Mr. Bob Saunders. The substance of his challenge to Mr. Dugger’s testimony need not be considered because the Council found that it did not need to rely on his testimony in reaching its ultimate conclu *96 sion that Vice-Chairman Leno violated the Ethics Ordinance. Because the Council did not rely on his testimony, any challenge to it is immaterial.
Vice-Chairman Leno’s contentions regarding the Council’s reliance on the testimony of Ms. Mercier and Mr. Saunders are based on his assumption that substantial evidence review applies. Because it does not, his contentions miss the mark. For example, he faults the Council for relying on Ms. Mercier’s testimony because of a claimed lack of “direct evidence” on certain points. He does not explain why direct evidence should be required. See State v. Cunningham, 320 Or. 47, 63, 880 P.2d 431 (1994) (in judging the sufficiency of the evidence in a criminal case “there is no distinction between direct and circumstantial evidence as to the degree of proof required.”).
 In a theme he often repeats, he also argues that the Council erred in relying on Ms. Mercier’s testimony because the Council did not explain why it had not relied instead on other evidence that Vice-Chairman Leno contends contradicted the witness. The cases on which Vice-Chairman Leno relies, however, are substantial evidence cases. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir.1994); Sahara, Coal Company v. Fitts, 39 F.3d 781, 782-83 (7th Cir.1994). A decision maker is not arbitrary or capricious simply because the decision maker has not explained why it has chosen to rely on certain evidence rather than on contrary evidence. Compare Garcia v. Boise Cascade Corp., 309 Or. 292, 787 P.2d 884 (1990) (“If a finding is reasonable in light of countervailing as well as supporting evidence, the finding is supported by substantial evidence.”). Demanding such an explanation would exceed this Court’s scope of review. Instead, under the “arbitrary and capricious” standard of review a decision maker has erred only if the decision maker has “offered an explanation that runs counter to the evidence before the agency [.]” O’Keeffe’s, 92 F.3d at 942. Except to the extent that he invites this Court to reweigh the evidence—an invitation the Court declines—Vice-Chairman Leno does not contend that the Council’s explanation for its decision “runs counter to the evidence.” Absent some arbitrary and capricious action—and none is apparent here—the Council is free to weigh the evidence itself and to choose what evidence it finds most probative.
Vice-Chairman Leno also complains that the Council erred by relying on hearsay. Assuming arguendo that the Council did so, the complaint provides no basis for relief. Even in a “substantial evidence” context, there is no absolute bar to reliance on hearsay evidence. See Reguero v. Teacher Standards and Practices, 312 Or. 402, 822 P.2d 1171 (1991) (so holding). Vice-Chairman Leno cites no case holding that relying on hearsay evidence renders a decision “arbitrary and capricious.” [1] Nothing in Vice-Chairman Leno’s argument convinces the Court that, in this case, the Council’s reliance on hearsay, if any, means that its decision or its factual findings are arbitrary or capricious.
The final witness challenged by Vice-Chairman Leno is Mr. Bob Saunders, the current Chief Financial Officer for the Tribe. He testified that Mr. Leno attempted to arrange for his wife to have her own office. By this time, the Members Benefit Program had been moved back under the Finance Department. When advised that all of the office space was already commit *97 ted, Mr. Leno held up two pieces of paper and said that they had just approved two jobs, but that Mr. Saunders “was going to have a hard time getting anything else done.” Mr. Saunders was disturbed by this and consulted with several Council members and the Tribal Attorney’s office about it.
The Council clearly found this testimony credible and probative, even to the the extent that the Council stated significantly that “[i]n particular, we find Vice-Chairman Leno’s statement to Mr. Bob Saunders regarding difficulty in getting anything else done a threat and a deliberate attempt by Vice-Chairman Leno to get office space for his wife.” (Findings and Opinion 5)
Vice-Chairman Leno’s complaints about the Council’s reliance on Mr. Saunders testimony are similar to those addressed above and can be dismissed for the reasons given above.
No due process right was violated.
Vice-Chairman Leno next contends that he was deprived of due process in the Council proceedings.
As a starting point, the United States Supreme Court has often said that due process is a flexible concept that varies with the particular situation. Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). At a bare minimum, due process requires “some kind of notice ... and some kind of hearing.” Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Essentially, the requirement is the opportunity to be heard at a meaningful time and in a meaningful manner. Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). To determine what procedural protections are required in a particular case, several factors are weighed:
“First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” Mathews v. Eldridye, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)
To summarize, interpretations and applications of the Due Process Clause are “intensely practical matters and the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation” Goss v. Lopez, 95 S.Ct. at 738, citing Cafeteria, Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961)
In the present case, Vice-Chairman Leno argues that he was given inadequate notice because the Ethics Ordinance applies to “apparent,” as well as actual, “improprieties,” because the prohibition against “[u]sing one’s position to coerce, threaten or intimidate a person or group” is too vague, because the allegations in the complaint were over broad and vague, and because he received notice of the hearing-date only about a week in advance of the hearing. As a consequence of that late notice, he asserts that he was not able “to have all his witnesses testify at the hearing” and could not have counsel present. He also claims that he was not provided with an impartial decision maker.
Those claims are unpersuasive. The Court does not find the language of the Ethics Ordinance to be vague, particularly in light of the specific examples of actual or “apparent” improprieties that are listed in the ordinance. § 275(e)(l)(B)(l)-(12). The concept of “[u]sing one’s position *98 to coerce, threaten or intimidate a person or group to provide financial benefit or other personal gain to oneself or another person with whom one has family, business or financial ties” also does not appear to be either opaque or vague. § 275(c)(l)(B)(9). Because it is clear from the ordinance that using one’s position on the Council to intimidate Tribal employees into giving favorable treatment to one’s spouse is conduct that is pi'ohibited by the ordinance, Vice-Chairman Leno can advance no successful claim based on the claimed vagueness of the ordinance. Village of Hoffman Estates v. Flipside, [455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) quoting Parker v. Levy,] 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (“One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.”).
Vice-Chairman Leno’s challenge to the specificity of the original complaint overlooks the fact that those allegations twice were clarified in advance of the hearing and that he was provided with a witness list. Due process only requires notice that gives sufficient detail to allow an opposing party to prepare his defense. Barnes v. Healy, 980 F.2d 572, 579 (9th Cir.1992). Vice-Chairman Leno had such notice here. His complaints about lost witnesses are also unavailing. He never has identified the witnesses he claims he would have called had he had more time, nor explained what they would have said. He also has provided no cogent explanation as to why his attorney could not appear or as to why he could not obtain substitute counsel. Moreover, he has not established that he has any right to counsel that applies here.
Vice-Chairman Leno further contends that he was deprived of due process because he was “not given a reasonable opportunity to prepare his defense and as a consequence he was prejudiced in his ability to challenge and cross-examine evidence [sic] and witnesses against him.” Again, he provides few specifics. He appears to reiterate his complaint about the use of hearsay evidence but, as discussed above, that complaint provides no basis for relief. The ordinance provides that a hearing be set relatively soon after an ethics complaint is filed, so Vice-Chairman Leno was on notice that a hearing would be held promptly. The Council nevertheless granted him additional time to respond to the allegations against him and provided him with additional information in advance of the hearing. He was not deprived of due process.[2]
Vice-Chairman Leno’s final due process claim is that he did not have an impartial decision maker. He relies on comments made by Councilman Mark Mercier at the close of the hearing and on the fact that both he and Mr. Mercier were candidates for election to the Council. Councilman Mercier’s gratuitous comments, while ill-advised, and unprofessional, were solely an expression of that Council member’s “own personal thoughts,” and do not reflect bias that would amount to a due process violation. It is true that under federal law, due process can be violated if one member of a tribunal is biased or has some interest in the outcome. Stivers v. Pierce, 71 F.3d 732 (9th Cir.1995). It has also been stated that there must be a *99 substantial showing of personal bias. Corstvet v. Boger, et. al., 757 F.2d 223 (10th Cir.1985). While these comments were unnecessary and unhelpful, they are insufficient to find a due process violation.
In addition, Vice-Chairman Leno claims that a bias existed due to the fact that both Council Member Leno and Council Member Ms. Merrier were running for Tribal Council during the same election cycle.
In order to better understand this last issue, and in fact, all of the issues discussed above, it is necessary to recall and emphasize the unique status of Tribal governments. The Indian Civil Rights Act of 1968 imposed many (but not all) of the same constitutional requirements that apply to the Federal and state governments to tribal governments. In ruling that the only remedy available in Federal Court for review of a Tribal Court decision is habeas corpus, the United States Supreme Court made a strong statement in support of tribal autonomy and self-government. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). The Court recognized that Tribal governments have unique political, cultural and economic needs.
Thus, the flexibility already inherent in due process generally, takes on greater meaning in the context of Tribal governments, especially where it involves regulation of the Tribe’s own Council members. Unique and particular circumstances of the structure of Tribal government must be considered. This is not to imply that a lower standard for due process is acceptable, but that the analysis will likely be different. For example, in Stands Over Bull v. BIA, 442 F.Supp. 360 (D.Mont.1977), the Court went so far as to say that the Council member involved had no right to an impartial hearing, but only to a fair hearing before the Tribal Council. The Court does not need to go that far in this case.
The Tribe’s interest in governing the ethical conduct of it’s own Council Members is a compelling one, going to the heart of Tribal sovereignty and self-government. Not surprisingly, since Santa Clara, Pueblo, Federal Courts no longer have had occasion to delve into these issues as they did in Stands Over Bull and the other older cases cited therein. However, Tribal Courts have addressed this issue. In Navajo Nation v. McDonald, 16 ILR 6086 (1989), the Tribal Court held:
“All .... government officials are obligated to exercise the power of their offices honestly, faithfully, legally, ethically, and to the best of their abilities, in a way which is beyond suspicion of irregularities. In short, these officials are obligated to perform primarily in the best interest of the ... people. The people do not expect their officials to exercise powers corruptly or use powers for personal gain or profit.”
The Ethical Standards Ordinance of the Grand Ronde Community demands these same high standards of it’s Council members. Furthermore, this Court itself has previously stated in Brandon, 18 ILR at 6140: “The Tribal Council must have the authority and the freedom to establish standards governing the conduct of it’s members.” This Court stands by and reemphasizes this point.
Absent arbitrary and capricious action, Constitutional violations, or violations of the ICRA, this Court cannot interfere.
The Grand Ronde Community has a nine member Tribal Council with a bloc of seats open in each election cycle, whereby candidates compete with each other for a number of available seats but not directly one-on-one for any particular seat. Tribal Election Ordinance Section 280. It is *100 conceivable that conflicts could exist which would command the recusal of a Council Member from considering the sanctioning of a co-Council Member. Based on the record, however, this is not such a case. In this case, there is an insufficient showing of a due process violation. To hold that a due process violation results simply because two Council members are standing for reelection—where one candidate is the subject of an ethics complaint and the other candidate is one of the Council members reviewing that complaint—would interfere unnecessarily with the Tribe’s ability to govern itself and to structure the form of its own government. The Court is not convinced that such an intrusion on the Tribe’s self-governance is either wise or warranted.
The Tribal Court does not have discretion to vacate Tribal Council’s Findings and Opinion.
Vice-Chairman Leno appears to argue that the Tribal Court has an independent, free-flowing authority to, in its discretion, “vacate” the Council’s findings and opinion. The Court disagrees. The Court’s scope of review is limited here, and nothing gives this Court the authority to substitute its judgment for that of the Council.
FINDINGS:
The Court finds that the action taken by the Council was not arbitrary or capricious. The Court further finds that Vice-Chairman Leno was not deprived of due process.
IT IS THEREBY ORDERED:
The Tribal Council’s Findings and Opinion are Affirmed.

. The cases on which he relies are inapposite. Waters v. Churchill, 511 U.S. 661, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994), is a First Amendment case. Pascal v. United States, 211 Ct.Cl. 183, 543 F.2d 1284, 1289 (1976), is a substantial evidence case.

. Vice-Chairman Leno adds that he was given no '‘opportunity” to challenge or confront the testimony of Mr. Cleve Brooks, whose written testimony was received after the close of the hearing. He admits, however, that he received a copy of the Council’s questions to Mr. Brooks and of his answers. He does not contend that he ever asked to be able to challenge or confront that testimony or that such a request was denied. Furthermore, the Council’s order does not indicate that it relied on Mr. Brooks' testimony.